Ahmad AHGHAZALI,
Plaintiff–Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,
Defendant–Appellee.

No. 87–1673.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 17, 1988.

Decided Feb. 10, 1989.

Robert Abraham (argued), Wayne County Neighborhood Legal Services, Detroit, Mich., for plaintiff-appellant.

Robert E. Hanson (argued) Chicago, Ill., for defendant-appellee.

Before WELLFORD, Circuit Judge and PECK and LIVELY,* Senior Circuit Judges.

LIVELY, Senior Circuit Judge.

This is a social security disability case in which the district court concluded that it lacked subject matter jurisdiction over a petition to review a decision of the Secretary of Health and Human Services (the Secretary) denying benefits. The district court found that because the plaintiff failed to exhaust his administrative remedies under the Social Security Act (the Act), the Secretary had not rendered a "final decision" within the meaning of section 205(g) of the Act, 42 U.S.C. § 405(g).[1] The Act precludes general federal question jurisdiction as a basis for reviewing a decision of the Secretary, 42 U.S.C. § 405(h), and one petitioning for review must comply with the requirements of § 405(g), the exclusive basis of jurisdiction.

I.

The history of this case is unusual, to say the least. The plaintiff, Ahmad Ahghazali, filed for disability insurance benefits in 1977 and for Supplemental Security Income (SSI) benefits in 1978. He alleged psychiatric problems and physical impairment in the lower back and legs. His disability insurance benefits claim was denied initially and on reconsideration. His SSI benefits claim was denied initially on November 17, 1978. The plaintiff again filed for disability insurance benefits in 1979. The claim again was denied initially on October 18, 1979, and on reconsideration on November 29, 1979.

The plaintiff then requested a hearing before an administrative law judge (ALJ). After conducting a hearing the ALJ denied the claims for both disability insurance and SSI benefits. The plaintiff appealed to the Appeals Council, which affirmed the ALJ's

* The Honorable Pierce Lively became a Senior Circuit Judge on January 1, 1989.

1. 42 U.S.C. § 405(g), in pertinent part, provides: Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.... As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.... The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary ...; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

decision on June 5, 1981. The Appeals Council's decision became the final decision of the Secretary.

The plaintiff then sought review in the district court. After receiving several extensions of time to answer, the Secretary made a motion to remand the case. In his brief in support of the motion the Secretary stated, "The purpose of the remand is to hold a *de novo* hearing because the tape of the prior hearing is missing." The district court granted the motion in an order entered May 12, 1982. The order stated, "The above-captioned case is hereby REMANDED to the defendant Secretary for further proceedings as may be appropriate." On remand the Appeals Council ordered a *de novo* administrative hearing.

While awaiting notice of the hearing, the plaintiff in July 1982 journeyed to Yemen for a "family emergency." He left without informing either his relatives or his friends of his whereabouts. In August 1982 the Secretary sent the plaintiff notice of the new hearing, which was scheduled for September 2, 1982. When the plaintiff did not appear at the hearing, the Secretary sent him a notice to show cause for his failure to appear. When the plaintiff failed to answer the show cause order, the ALJ recommended that "this matter be dismissed and that the reconsideration determination [be] held to be determinative." On February 9, 1983, the Appeals Council adopted the ALJ's recommendation. Accordingly, the Appeals Council concluded that

> the Disability Determination and Transmittal dated October 18, 1979, is the final administrative determination of the Secretary on the application for disability insurance benefits filed on August 1, 1979, and the determination dated November 17, 1978 is the final determination of the Secretary on the application for supplemental security income filed on October 4, 1978.

At this time the plaintiff, who has difficulty understanding English, was not represented by counsel.

After returning from Yemen in March 1983, the plaintiff heard nothing from the Secretary and eventually he hired an attorney. In 1986 the United States Attorney's office contacted the plaintiff and asked whether the plaintiff would agree to reinstate the case in federal court. The plaintiff readily agreed. On August 25, 1986, the court entered a "Stipulation and Order of Reinstatement," prepared by the government and signed by both parties. In this document the parties stipulated "that because the Secretary has completed administrative proceedings in accordance with the Court's May 2, 1982[2] Order of Remand, that [sic] this case be reinstated, for further action by the Court."

On August 28, 1986, the Secretary filed an answer, which stated in its first numbered paragraph:

> 1. Answering the allegations contained in plaintiff's complaint, defendant states that on December 22, 1981, the plaintiff timely filed his complaint for judicial review of the "final decision" of the Secretary rendered on June 5, 1981; that, upon motion of the Secretary before answer was filed, the court on May 10, 1982, remanded the case to the Secretary; that after further development and reconsideration, the Appeals Council on February 9, 1983, issued its decision holding that the plaintiff is not entitled to the benefits claimed under sections 216(i) and 223, respectively, of the Social Security Act, as amended, 42 U.S.C. 416(i) and 423; that the Appeals Council's decision became the "final decision" of the Secretary; and that this court has jurisdiction over the subject matter of this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. 405(g).

On November 6, 1986, the Secretary moved for summary judgment in the district court, asserting, contrary to the statements in his answer, that the court lacked subject matter jurisdiction to hear the case. The magistrate agreed with the Secretary and recommended that the court grant the Secretary's motion. On April 16, 1987, the

---

2. The order of remand was dated May 10, 1982, and filed in the district court on May 12, 1982.

The reference to May 2, 1982, is an apparent typographical error.

district court dismissed the case. The court concluded that the Secretary had never reached a final decision because the plaintiff had not exhausted his administrative remedies. Thus, the court held that it lacked jurisdiction under the Act to decide the case. Moreover, the court concluded that the stipulation of reinstatement could not "confer" jurisdiction.

## II.

The plaintiff makes several distinct, but related arguments. First, he contends that the district court did not lose jurisdiction by remanding the case to the Secretary on May 12, 1982, for further proceedings. The June 5, 1981, decision of the Appeals Council undeniably constituted a "final decision" of the Secretary sufficient under § 405(g) to confer jurisdiction on the district court. The plaintiff maintains that the court retained jurisdiction when it returned the case to the Secretary for further proceedings. Second, the plaintiff argues, the court had § 405(g) jurisdiction because the Secretary clearly waived any requirement of exhaustion of administrative remedies by adopting the agency's "Reconsideration Determination," by stipulating to reinstatement of the case in district court, and by admitting in his answer that the February 1983 Appeals Council decision was, in fact, a "final decision." Finally, citing cases that hold decisions of the Secretary not pursued through the review process to be final for res judicata purposes, the plaintiff asserts that the Appeals Council decision was final even without a waiver.

The Secretary responds that the district court lacked jurisdiction because the plaintiff failed to exhaust available administrative remedies. He appears to argue that the district court's remand order was equivalent to dismissal. When the Secretary attempted to comply with the remand order, he argues, the plaintiff failed to avail himself of the available administrative processes by not appearing for the hearing. Thereafter, the plaintiff failed to seek administrative review of the reconsideration determination. Though "final" in

form, the February 1983 Appeals Council decision could not support jurisdiction because it was incapable of being reviewed. In these circumstances, the Secretary argues, there was no continuing jurisdiction. Rather, by remanding the case the district court lost jurisdiction and never regained it.

The Secretary argues at length that he has not waived the exhaustion requirement of § 405(g) in this case and that the stipulation did not "confer" jurisdiction on the district court. He does not address the argument, presented to the district court in briefs, that the admissions contained in his answer constituted a waiver. Finally, the Secretary asserts that the cases concerning the res judicata effect of unreviewed decisions are not on point. A reconsideration determination is final, in that it disposes of certain claims, but it is not a "final decision" of the Secretary under § 405(g) because it is not a "final decision made after a hearing."

## III.

■ The Supreme Court has identified three requirements for judicial review pursuant to § 405(g): "(1) a final decision of the Secretary made after a hearing; (2) commencement of a civil action within 60 days after the mailing of notice of such decision (or within such further time as the Secretary may allow); and (3) filing of the action in an appropriate district court...." *Weinberger v. Salfi*, 422 U.S. 749, 763–64, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975). While the second and third requirements may be waived by the parties, the first requirement is "central to the requisite grant of subject-matter jurisdiction." *Id.* at 764, 95 S.Ct. at 2466.

In *Salfi* the Court did not require literal compliance with even the first requirement of § 405(g). The plaintiffs challenged the constitutionality of a provision of the Act in a class action. However, the named plaintiffs had not obtained a final decision with respect to their individual claims. After denial on reconsideration by a regional office the plaintiffs filed suit in the district court. The Supreme Court held that the

purposes of the administrative exhaustion requirement "have been served once the Secretary has satisfied himself that the only issue is the constitutionality of a statutory requirement, a matter which is beyond his jurisdiction to determine, and that the claim is neither otherwise invalid nor cognizable under a different section of the Act." *Id.* at 765, 95 S.Ct. at 2467. Thus, the Court held that the Secretary may determine "in particular cases that full exhaustion of internal review procedures is not necessary for a decision to be 'final' within the language of § 405(g)." *Id.* at 767, 95 S.Ct. at 2467. The Court dealt similarly with the requirement that the decision be made "after a hearing." Where a hearing would accomplish nothing with respect to the only issue to be resolved, it would be futile to require one. In deciding this point, the Court noted that "the Secretary may, of course, award benefits without requiring a hearing." *Id.*

In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court interpreted the statement in *Salfi* that the first requirement of § 405(g) is "central" to jurisdiction. The Court stated:

> Implicit in *Salfi*, however, is the principle that this condition consists of two elements, only one of which is purely "jurisdictional" in the sense that it cannot be "waived" by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such a claim there can be no "decision" of any type. And some decision by the Secretary is clearly required by the statute.

*Id.* at 328, 96 S.Ct. at 899. Although the Secretary had not waived the exhaustion requirement, the Court concluded that *Eldridge* presented a proper case for a court to waive exhaustion. The conditions for court waiver are that an issue (here the constitutional challenge) be "entirely collateral" to the claim for benefits, and that the plaintiff assert a colorable claim that he

could not obtain full relief at a post-deprivation hearing. *Id.* at 330–31, 96 S.Ct. at 900–01.

In *Mathews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), none of the plaintiffs in a class action completely exhausted their administrative remedies. However, the Secretary acknowledged that two applications for medicare benefits raised no disputed issues of fact and stipulated that the interlocutory denials should be treated as final for purposes of litigation. With respect to a third application, the Secretary merely stipulated that the plaintiff had filed an application that could not be allowed under the statute. However, the Secretary had taken no formal action to deny the third plaintiff's application. The Court found that the nonwaivable requirement that an application for benefits be filed was met by all three applicants. *Id.* at 75, 96 S.Ct. at 1889. Turning to the waivable requirement of a final decision after a hearing, the Court stated, "For jurisdictional purposes, we treat the stipulation in the District Court as tantamount to a decision denying the application and as a waiver of the exhaustion requirements." *Id.* at 76–77, 96 S.Ct. at 1889–1890. The Court concluded that as in *Salfi*, "the Secretary's submission of the question for decision on the merits by the District Court satisfied the statutory requirement of a hearing and final decision." *Id.* at 77, 96 S.Ct. at 1890.

The common feature of *Salfi*, *Eldridge* and *Diaz* is that the only issue requiring judicial determination was one of constitutionality, a matter beyond the Secretary's power to decide. In those cases exhaustion of administrative remedies following denial of the claims would have added nothing to the record for judicial review. In *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), however, the Court found that the plaintiffs had satisfied the nonwaivable requirement of making a claim for benefits, but none had obtained a "final decision" from the Secretary. Although the plaintiffs in *Ringer* raised several constitutional and statutory claims, the Court considered these claims "inextricably

intertwined" with the plaintiffs' claims for benefits. *Id.* at 614, 104 S.Ct. at 2021. The Court noted that in *Salfi* and *Diaz* it had "held that the Secretary herself may waive the exhaustion requirement when she deems further exhaustion futile." *Id.* at 617, 104 S.Ct. at 2023. But, the Court concluded, the Secretary had not waived exhaustion in *Ringer.* The Court refused to waive exhaustion itself because, unlike the circumstances in *Eldridge,* the issues here were not "wholly collateral" to the plaintiffs' claims for benefits and the plaintiffs had not presented a colorable claim that they could not obtain full relief at a post-deprivation hearing. *Id.*

The Supreme Court most recently considered the jurisdictional requirements of § 405(g) in *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). In that case the plaintiffs brought a class action claiming that the Secretary was denying benefits on the basis of an unlawful, unpublished policy that was arbitrary and capricious and violated both the Constitution and the Act. Agreeing with the district court, the Supreme Court found that this was an appropriate case for the court to waive the exhaustion requirement of § 405(g). In the course of its opinion the Court reviewed its previous decisions and again made clear that the "final decision" requirement contains both waivable and nonwaivable elements. The exhaustion of administrative remedies requirement may be waived by the Secretary and, in special cases, by the courts. The only "purely" jurisdictional requirement in the sense that it cannot be waived "is the requirement that a claim for benefits shall have been presented to the Secretary." *Id.* at 483, 106 S.Ct. at 2031, quoting *Eldridge,* 424 U.S. at 328, 96 S.Ct. at 899.

## IV.

■ The "purely" jurisdictional requirement of § 405(g) was satisfied in this case when the plaintiff filed his application for benefits in 1977. This is not a "special case" where the issue for judicial review is entirely collateral to the claim for benefits. Thus, we are not concerned with the conditions under which a court may waive exhaustion; the question is whether the Secretary waived the exhaustion requirement in this case. In our opinion the record demonstrates that the Secretary, for unexplained reasons, did waive the requirement that the plaintiff exhaust administrative remedies following the Appeals Council's order of February 9, 1983. That order adopted the ALJ's recommendation that the "matter be dismissed and that the reconsideration determination [be] held to be determinative."

When the Secretary sought the plaintiff's agreement to reinstate this case in district court three years later, he prepared a stipulation and order that recited as the basis for reinstatement the fact that "the Secretary has completed administrative proceedings in accordance with the Court's May 2, [sic] 1982 Order of Remand." In his answer, filed three days later, the Secretary stated unequivocally that the Appeals Council's February 9, 1983, decision denying benefits "became the 'final decision' of the Secretary." The answer further admitted that the district court had subject matter jurisdiction under § 405(g).

This case is unlike those in which the Supreme Court concluded that the Secretary had waived the exhaustion requirement. No constitutional issue is involved and it is not clear, though it is highly probable given the state of the record, that further administrative appeals would have been futile. Nevertheless, it is hard to imagine a clearer case of waiver by a responsible government official. It appears that, at the time the Secretary sought reinstatement and prepared the stipulation, he believed the court had not lost jurisdiction by remanding the case in the first place. The stipulation referred to the remand order and confirmed that the Secretary had completed the administrative processes for which the case was remanded. The answer went further; it verified that the February 1983 decision was the "final decision" of the Secretary. For that decision to constitute a "final decision," one of two things had to have occurred. Either the plaintiff exhausted the available administrative remedies, or the Secretary waived exhaustion.

Since the Secretary based his later motion for summary judgment on the fact that the plaintiff had not actually exhausted his administrative remedies, the only possible meaning of the assertions in the answer is that the Secretary waived exhaustion.

Statements in pleadings that acknowledge the truth of some matter alleged by an opposing party are judicial admissions binding on the party making them. In his petition for judicial review the plaintiff alleged that he had exhausted all of his administrative remedies, thus rendering the February 9, 1983, Appeals Council decision "final" for § 405(g) purposes. In his only responsive pleading the Secretary removed this issue from the case by stating that the required "final decision" had been rendered.

If the exhaustion requirement was truly jurisdictional, there could be no waiver and neither party, nor both agreeing, could confer subject matter jurisdiction upon the court by stipulation or admission. "[N]o action of the parties can confer subject-matter jurisdiction upon a federal court." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). There is, however, a distinction between attempting to confer jurisdiction and entering "a stipulation to a fact which serves to establish federal jurisdiction." *United States v. Anderson*, 503 F.2d 420, 422 (6th Cir.1974). Similarly, an admission of a jurisdictional fact in a pleading may establish a basis for subject-matter jurisdiction. *Ferguson v. Neighborhood Housing Services, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986). The Secretary creates a smoke screen with his argument about conferring jurisdiction. First, he ignores the fact that the Supreme Court has held that the exhaustion requirement is not purely jurisdictional in the sense of being nonwaivable. Second, he appears to overlook the fact that his pleading, which is required by Fed. R.Civ.P. 11 to be grounded in fact, clearly reflected a waiver of the exhaustion requirement by stating unequivocally that the last Appeals Council decision was the "final decision" of the Secretary and therefore subject to review under § 405(g).

## Conclusion

The district court erred in dismissing this case. The plaintiff met § 405(g)'s only truly jurisdictional requirement. He filed a claim for benefits, and there is "some decision by the Secretary...." *Eldridge*, 424 U.S. at 328, 96 S.Ct. at 899. Because the Secretary waived a nonjurisdictional requirement of § 405(g), the district court had jurisdiction. In formal pleadings, the Secretary chose to treat the February 9, 1983, decision of the Appeals Council as his final decision. His failure to preserve the transcript of the first hearing can be remedied. The review scheme of § 405(g) recognizes that the district court may require evidence not found in the administrative record in order to perform its appellate function. It obtains this information by remanding to the Secretary. The statute directs the Secretary, after complying with the remand order, to "file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based."

The plaintiff's failure to appear at the scheduled hearing in 1982 is no more responsible for the incomplete record than the Secretary's failure to preserve the transcript of the original hearing. Since it had jurisdiction, in the exercise of its equitable powers the district court should have remanded the case to the Secretary a second time with directions to conduct proceedings necessary for a meaningful review of his final decision.

Having concluded that the Secretary waived the exhaustion requirement and that the plaintiff complied with the purely jurisdictional requirement for an appeal to the district court under § 405(g), we do not discuss the other arguments presented by the parties. The judgment of the district court is reversed. The case is remanded to the district court with directions to remand it to the Secretary for proceedings required to compose a record capable of judicial review. The district court will retain jurisdiction while the case is on remand.

WELLFORD, Circuit Judge, concurring in a remand.

Mr. Ahghazali, a Yemen native, schooled in Kuwait, came to this country apparently in 1971 and worked in several jobs for about five years before claiming disability benefits in 1977. At his hearing an Arabic interpreter was present.[1] In December of 1980 the ALJ found after a hearing on Ahghazali's claim that "the only evidence of a severe impairment consists of the records of the claimant's psychiatric problem in March 1977 and April 1977," but "no evidence of any significant physical disorder." The ALJ found no "further evidence of a continuing mental problem after April, 1977" following an opportunity to observe Ahghazali and hear his testimony. The original claim filed in 1977 made no reference to any mental problem and indicated that he had worked for over a year until February 1977 at Chrysler as an inspector. His 1979 claim indicated that his "left side" was "partially paralyzed" and reflected an address in Brooklyn, New York, rather than the former Hamtramck, Michigan address.

The medical files in the administrative record support the findings of the ALJ with regard to the physical findings. The April 1977 discharge summary of the Detroit Psychiatric Institute indicated some paranoia because of a claimed beating by neighbors and indicated an alcohol abuse problem. The doctor giving psychotherapy indicated that Ahghazali desired to go back to Yemen, that his friends were contacted, "and arrangements were made for him to go back to his native country." Prognosis was deemed fair "once he is back in a familiar environment," but the summary indicated some confusion to persist: The primary therapist indicated that "he is leaving the country."

As a part of the history in the record it is indicated that claimant returned to Yemen in 1973 "where an arranged marriage was completed," and thereafter he returned to the Detroit area. In 1976, after his wife left him to return to Yemen, Ahghazali followed her there and then divorced her. It was after his second return that "overt psychiatric symptoms seemed to appear."

No mental problem was noted in a Henry Ford hospital discharge summary issued in relation to a perianal abscess which was treated in July of 1977. A residual functional capacity worksheet dated August 11, 1977 indicated that Ahghazali could return to work and could, among other things, "exercise acceptable judgment," but Dr. Maraba noted "some underlying anxiety or emotional disorder." Dr. Rauch, a psychiatrist, provided at the request of the Michigan vocational rehabilitation service, examined Ahghazali in October of 1977 and found him "not psychiatrically disabled," despite difficulties in full communication by reason of language barriers.

A Brooklyn physician two years later could "detect no evidence of mental illness," and found "an element of malingering" in his physical complaints. A New York State Bureau of Disability determination in October of 1979 found his claimed impairment to be only "mild." (Dr. Zimmerman indicated after examination no "significant organic findings.")

Despite the loss of the hearing transcript, the ALJ made thorough findings, and the medical records indicate that the findings are supported by appropriate medical evidence. Plaintiff left the country without notice to the Secretary and without providing a forwarding address. In addition, he failed timely to respond to an order to show cause as to why the case should not be dismissed for failure to prosecute. I believe that dismissal was an appropriate action by the Secretary. I doubt that plaintiff's administrative and procedural failures did provide him a basis for appeal to the federal courts under the circumstances.

Despite my serious doubts and reservations, I would remand the case to the district court to determine, on this record, whether additional proof is necessary in order to render a judgment as to whether

---

1. An interpreter was provided although the ALJ found that "he can speak some English" and the person issuing the notice of hearing indicated that "he speaks good English." Others indicate that his knowledge and use of English is limited.

claimant has established an entitlement to benefits.